FILED
United States Court of Appeals
Tenth Circuit

April 15, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

G.S.,

        Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

        Respondent.

No. 09-9526
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **KELLY, PORFILIO,** and **O'BRIEN**, Circuit Judges.

Petitioner G.S., a citizen of Mexico, seeks review of a Final Administrative

Removal Order issued by the Department of Homeland Security. For the reasons

that follow, we take jurisdiction under 8 U.S.C. § 1252(a), and we deny the

petition.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. **Background**

Petitioner entered the United States in 1991 without inspection. In 1993 he was convicted in California state court for Possession/Purchase of a Controlled Substance for Sale, which was cocaine, and sentenced to 150 days in jail and two years' probation. After his release, petitioner continued to live in the United States illegally. He was arrested in 2009 on a concealed-weapons charge and eventually released into the custody of the Bureau of Immigration and Customs Enforcement (ICE). On March 25, 2009, while in ICE custody, the Department of Homeland Security (DHS) served him with a Notice of Intent to Issue a Final Administrative Removal Order (NOI). In the NOI, DHS claimed that petitioner's 1993 cocaine conviction was an "aggravated felony" as defined in 8 U.S.C. § 1101(a)(43)(B): "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." Accordingly, DHS alleged petitioner was removable under 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."[1]

The NOI was issued pursuant to 8 U.S.C. § 1228(b). As relevant to petitioner, § 1228(b) provides that, in the case of an alien who "was not lawfully admitted for permanent residence" when § 1228(b) proceedings commenced, and

---

[1]  There is no analytical distinction between the terms "deportable" and "removable" or any of their variants, and we use them interchangeably. *See Hamilton v. Gonzales*, 485 F.3d 564, 565 n.2 (10th Cir. 2007).

who has been convicted of an aggravated felony, "[t]he Attorney General may . . . determine [his] deportability . . . under section 1227(a)(2)(A)(iii) . . . and issue an order of removal pursuant to the procedures set forth in this subsection or [8 U.S.C. §] 1229a." 8 U.S.C. § 1228(b). There are a number of distinctions between the removal procedures under § 1228(b) and § 1229a, two of which are relevant here. First, proceedings under § 1228 involve an expedited determination of removability by an immigration service officer, *see generally* 8 C.F.R. § 238.1, whereas an immigration judge (IJ) conducts removal proceedings under § 1229a, *see* 8 U.S.C. § 1229a(a)(1). Second, an alien in § 1228(b) proceedings is not eligible for any discretionary relief from removal. *See* 8 U.S.C. § 1228(b)(5).

In signing the NOI's certificate of service, petitioner marked a box requesting withholding or deferral of removal under 8 U.S.C. § 1231(b)(3) (hereafter referred to as "restriction on removal") and under the United Nations Convention Against Torture (CAT). As permitted by 8 C.F.R. § 238.1(c), he filed a timely response to the NOI on April 2, 2009,[2] requesting the evidence against

---

[2]    The Certified Administrative Record respondent initially supplied to the court (including the documents attached to respondent's brief as a supplemental certified record) did not contain petitioner's request for the evidence against him. But the request is contained in the Supplemental Certified Administrative Record filed in response to this court's orders regarding the state of the record. The request is dated April 2, 2009, and indicates that it was sent by facsimile. As respondent has provided no argument to the contrary, we take it as now conceded that petitioner filed the request on that date.

him, including the charging document from the 1993 cocaine conviction, in order to determine whether to challenge DHS's position that the conviction falls within the statutory definition of an aggravated felony. He also reiterated his intent to seek restriction on removal and CAT relief, and he objected to his detention.

On April 13, 2009, ICE served petitioner with a copy of the Final Administrative Removal Order (FARO), which ordered him removed to Mexico. Three days later, petitioner filed an emergency motion to rescind the FARO on the grounds that the government had not responded to his request for the evidence against him and that an examination of the record of conviction was necessary in order to challenge whether his 1993 conviction was an aggravated felony. He also requested to be placed in removal proceedings under § 1229a instead of § 1228(b), on the ground that he was not an alien described under § 1228(b). Petitioner claims that on the same day, ICE sent the evidence against him. The record contains no ruling on the motion to rescind.

On May 12, 2009, twenty-nine days after issuance of the FARO, petitioner filed the present petition for review. Also on that date, he received a reasonable-fear hearing before an asylum officer based on his expressed fear of persecution or torture if he were removed to Mexico. *See generally* 8 C.F.R. § 208.31 (establishing reasonable-fear hearing procedure for aliens ordered removed under, *inter alia*, § 1228(b)). The asylum officer determined that petitioner established a reasonable fear of torture and referred the matter to an IJ

pursuant to 8 C.F.R. § 208.31(e) for full consideration of petitioner's request for relief from removal. That regulation permits an IJ to consider a § 1228(b) alien's request for restriction on removal and CAT relief, but not the validity of the underlying FARO. On December 7, 2009, after a hearing, the IJ denied relief. Petitioner waived review of the IJ's decision by the Board of Immigration Appeals (BIA or Board) that is available under 8 C.F.R. § 208.31(e), and on December 10, 2009, he was removed to Mexico.

## II. Discussion

In his petition for review and supporting briefs, petitioner challenged his placement in § 1228(b) expedited removal proceedings on the ground that he is not an alien described in § 1228(b). He also claimed he was denied due process when DHS issued the FARO without providing him an opportunity to challenge whether his 1993 conviction qualifies as an aggravated felony. He further contested his detention.

In a response brief, respondent claimed we lack jurisdiction over the FARO, arguing that petitioner's pursuit of administrative relief from removal through the reasonable-fear hearing process rendered the FARO a nonfinal order of removal. Respondent also challenged venue and, in the alternative, contested each of petitioner's substantive arguments.

In view of the jurisdictional issue, we abated the petition for review until the reasonable-fear proceedings ended. After those proceedings concluded, we

reinstated the petition and ordered supplemental briefs regarding whether petitioner's removal mooted his petition for review. We also requested that the parties supplement the record provided to the court. These matters are complete, so we turn to the issues.

As discussed below, we first assume, without deciding, that petitioner's pursuit of administrative relief from the FARO rendered the FARO nonfinal at the time he filed his petition for review, and we conclude that completion of the reasonable-fear process cured any jurisdictional defect in the petition due to prematurity. We then conclude that petitioner exhausted his administrative remedies regarding the procedural safeguards afforded under § 1228(b) by timely filing a request for the evidence against him. We next hold that venue is proper and that petitioner's removal has not mooted his petition. Finally, on the merits, we conclude that respondent issued the FARO before providing petitioner with the evidence against him and an opportunity to challenge whether his conviction qualifies as an aggravated felony, but further conclude that the error was harmless because the conviction qualifies as a "drug trafficking crime (as defined in section 924(c) of Title 18)" under 8 U.S.C. § 1101(a)(43)(B). Finally, we reject petitioner's argument that it was improper to place him in expedited removal proceedings under § 1228(b) because he is not an alien described in that statute.

## A. Jurisdiction

This court's jurisdiction over a petition for review of a removal order is limited to "a final order of removal." 8 U.S.C. § 1252(a)(1). Congress has provided two contingencies by which a removal order can become final—when either (1) the Board affirms an order determining that an alien is removable or (2) upon "the expiration of the period in which the alien is permitted to seek review of such order by the Board," whichever is earlier. 8 U.S.C. § 1101(a)(47)(B). Both contingencies depend upon the availability of BIA review, but a FARO is not appealable to the BIA—review lies only with the courts of appeals. *See* 8 U.S.C. § 1228(b)(3) ("The Attorney General may not execute [a FARO] until 14 calendar days have passed from the date that such order was issued, unless waived by the alien, in order that the alien has an opportunity to apply for judicial review under section 1252 of this title."); *id.* § 1252(a)(1), (a)(5) (final orders of removal are appealable to courts of appeals). Because there is no opportunity for BIA review, neither of the contingencies in § 1101(a)(47)(B) can occur. Thus, the statutory definition of finality provides no helpful guidance in determining whether the pursuit of administrative relief from removal via a reasonable-fear proceeding renders a FARO nonfinal until the administrative proceedings have concluded. Indeed, respondent concedes that had petitioner not sought further administrative remedies in the form of restriction on removal and CAT relief, the FARO would have been final and appealable directly

to this court at the time it was issued.  *See* Resp. Br. at 19 & n.7.  Thus, there is nothing inherently nonfinal about the FARO itself, and its title ("*Final Administrative Removal Order*") suggests finality.

Nevertheless, respondent argues that the FARO was not final because, under 8 C.F.R. §§ 208.5(a) and 1003.6(a), it could not have been executed while petitioner's restriction and CAT claims remained the subject of administrative proceedings.  Respondent also contends that completion of the administrative proceedings did not cure the FARO's nonfinality because the petition for review was a nullity at the time it was filed.  Instead, respondent maintains, the FARO became final only when petitioner waived BIA review of the IJ's adverse decision on his claims for relief from removal (sometime between December 7 and 10, 2009), and this court lacks jurisdiction because petitioner failed to file a timely petition for review thereafter.

It appears that no court has ruled on the precise issue presented here: whether a FARO is rendered nonfinal by an alien's election to pursue relief from the FARO through the reasonable-fear process of 8 C.F.R. § 238.1.  We need not decide the matter today.  Even if the FARO was not final when issued due to petitioner's election to pursue further administrative relief under § 238.1, we conclude that completion of the administrative proceedings cured any jurisdictional defect in the petition for review that might be due to prematurity. First, the relevant statutory provision, 8 U.S.C. § 1252(b)(1), is titled "Deadline"

-8-

and reads in its entirety: "The petition for review must be filed not later than 30 days after the date of the final order of removal." This provision sets a filing deadline 30 days *after* a final removal order is entered, compliance with which is "mandatory and jurisdictional." *Nahatchevska v. Ashcroft*, 317 F.3d 1226, 1227 (10th Cir. 2003) (quotation omitted). But the provision is silent with respect to petitions for review filed *before* the issuance of a final order of removal. While the ordinary course would be to await a final removal order in order to more precisely challenge it, § 1252(b)(1), by its plain terms, does not erect a jurisdictional bar to a petition filed prior to the date of the final order of removal; it speaks only to late-filed petitions.

Second, the parties have not pointed us to, nor have we found, any cases that have considered whether a petition for review of a FARO, filed after a FARO issues but while an alien remains in the reasonable-fear process, ripens upon completion of the reasonable-fear process.[3] The cases identified by respondent

---

[3] The Seventh Circuit addressed a related issue in *Eke v. Mukasey*, 512 F.3d 372 (7th Cir. 2008). In *Eke*, the petitioner filed a petition for review after the conclusion of the reasonable-fear process, which was more than thirty days after the FARO issued. The court concluded, with little analysis, that it had jurisdiction to review the FARO despite the fact that the petition was untimely with regard to it because the agency was not yet through with petitioner's claims. *Id.* at 377-78. As we read *Eke*, the case does not stand for the broad proposition respondent reads into it, that the proper procedure for petitioning for review of a FARO is to await conclusion of the reasonable-fear process, at which time the FARO becomes final along with any decision on an alien's claims for relief from removal. Therefore, *Eke* sheds little light on the question presented here.

have considered whether a "premature" petition for review can ripen in non-FARO circumstances, and the circuits have reached different conclusions. In *Lewis v. Gonzales*, 481 F.3d 125, 128-29 (2d Cir. 2007), the Second Circuit considered its jurisdiction over a petition for review that was filed after an IJ had issued a removal order but before the BIA had ruled on a pending appeal from that order. The court held that it had jurisdiction over such "otherwise premature petitions, notwithstanding the lack of a later-filed, timely petition, when 'the BIA has since affirmed petitioner's removal order and the respondent has not shown prejudice.'" *Id.* at 129 (quoting *Foster v. INS*, 376 F.3d 75, 77 (2d Cir. 2004)). The court explained that regardless of whether the premature petition was considered to incorporate the later-filed final order, or whether the court granted the petitioner's motion to amend the filing date of this petition, the result was the same: the court had jurisdiction. *Id.*

Three other cases respondent identifies fall on the other side of the fence. In *Moreira v. Mukasey*, 509 F.3d 709, 712-14 (5th Cir. 2007), the Fifth Circuit considered *Lewis* but held that a petition filed while an alien's appeal of an IJ's removal order was pending before the BIA was premature and did not ripen upon the BIA's dismissal of the appeal. In *Jaber v. Gonzales*, 486 F.3d 223, 228-29 (6th Cir. 2007), the Sixth Circuit reached the same conclusion with respect to a petition for review filed while an appeal of an IJ's denial of a motion to reopen was pending before the BIA, which ultimately denied the appeal. And in *Brion v.*

*INS*, 51 F. App'x 732, 733 (9th Cir. 2002), the Ninth Circuit concluded it lacked jurisdiction over a petition for review of a BIA order reversing an IJ's grant of suspension of removal and remanding to an IJ for further proceedings. The court reasoned that "a premature petition is a nullity because there is no final deportation order to review," and explained that "the fact that the BIA ultimately issued a final order of deportation," which was apparently in the form of an answer to a question the IJ certified to the Board, does not "cure a petition that was filed prematurely." *Id.* & n.1 (quotation omitted).[4]

The common, material feature these four cases share is that, at the time the petition for review was filed, the matter was subject to further administrative review by either the Board (*Lewis*, *Moreira*, and *Jaber*) or both an IJ and the Board (*Brion*). In contrast here, a FARO is not subject to IJ or BIA review. Moreover, petitioner has not conceded removability. In light of these facts,

---

[4]    Respondent also relies on two other cases in which courts concluded that jurisdiction was lacking where the BIA reversed an IJ decision and remanded for further consideration. *See Mahecha-Granados v. Holder*, 324 F. App'x 735, 738 (10th Cir. 2009) (applying the administrative-remand doctrine and refusing to "engage in piecemeal review" of the BIA's reversal of an asylum decision while the IJ had before him claims seeking "other impediments" to removal); *Chupina v. Holder*, 570 F.3d 99, 103 (2d Cir. 2009) (declining to exercise jurisdiction over BIA order that reversed grant of asylum and remanded for consideration of claims for relief from removal because BIA decision was not final within meaning of 8 U.S.C. § 1101(a)(47)(B)(i)). Here, administrative remand is not implicated—neither the IJ nor the BIA have authority to revisit the FARO during the reasonable-fear proceeding—and as stated above, a FARO is not amenable to the statutory definitions of finality set out in § 1101(a)(47)(B). We therefore view these cases as unhelpful.

combined with the lack of any statutory prohibition against filing a petition for review prior to the entry of a final order of removal, we will adapt the Second Circuit's reasoning in *Lewis* and hold that a petition for review filed after a FARO has issued but before an alien has completed the reasonable-fear process ripens upon completion of that process, provided the government has shown no prejudice arising from the timing of the petition. In this case, respondent has shown no prejudice, so we take jurisdiction. We reiterate that our analysis is based on an assumption that the FARO was not final when issued because petitioner elected to pursue further administrative relief in the reasonable-fear process. And we explicitly leave open the question whether a "premature" petition in other removal contexts ripens once administrative remedies are exhausted.

## B. Exhaustion

Although not raised by the parties, we briefly consider exhaustion because the failure to exhaust administrative remedies is jurisdictional with respect to removal orders. *See* 8 U.S.C. § 1252(d)(1); *Batrez Gradiz v. Gonzales*, 490 F.3d 1206, 1209 (10th Cir. 2007). An alien's failure to file a timely response to an NOI bars judicial review of whether he received the procedural safeguards of § 1228(b) because it is a procedural error that could have been corrected by the agency. *Gonzalez v. Chertoff*, 454 F.3d 813, 816 (8th Cir. 2006). Because the record indicates that petitioner's request for the evidence against him was filed within the time limit of 8 C.F.R. § 238.1(b)(2)(i), *see supra*, n. 2, we conclude

-12-

that he exhausted administrative remedies with respect to the procedural due process issue at the heart of our merits disposition.

### C. Venue

Respondent correctly states that the proper venue for a petition for review is in "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2). But his argument that venue is improper in this circuit because petitioner's proceedings are still pending before an IJ has lost all force since an IJ in this circuit has completed petitioner's proceedings.

### D. Mootness

Having established our statutory jurisdiction and venue, we next consider our constitutional jurisdiction, specifically whether the petition for review has become moot by virtue of petitioner's removal to Mexico. Removal does not create a statutory bar to review of a removal order, but we must be satisfied that there is still a live case or controversy. *See Tapia Garcia v. INS*, 237 F.3d 1216, 1217 (10th Cir. 2001). In responding to our order to show cause, petitioner inexplicably failed to address mootness, arguing instead this court's statutory jurisdiction. Commendably, respondent has acknowledged that under *Tapia Garcia*, *id.* at 1218, this matter is not moot given that there are collateral consequences arising from petitioner's removal, including a permanent bar to admissibility (absent respondent's consent) because his removal was based on a

-13-

conviction for an aggravated felony, *see* 8 U.S.C. § 1182(a)(9)(A)(ii)-(iii).  We

agree that there are sufficient collateral consequences arising from petitioner's

removal, and conclude that his petition for review is not moot.  However, because

petitioner is no longer in ICE custody and the record does not support application

of any of the exceptions to the mootness doctrine,[5] any issue pertaining to the

legality of his detention is now moot.  *See Ferry v. Gonzales*, 457 F.3d 1117,

1132 (10th Cir. 2006) (holding that release from custody mooted habeas petition

where the only collateral consequences arose from removal order)*; Riley v. INS*,

310 F.3d 1253, 1256-57 (10th Cir. 2002) (same where record was insufficient to

support mootness exception for actions capable of repetition yet evading review).

## E.  Merits

With jurisdiction and venue firmly established, we now turn to the merits

of the petition for review.  Because DHS ordered petitioner removed by reason of

his commission of an aggravated felony, our jurisdiction is limited to

constitutional claims and questions of law.  *See Abiodun v. Gonzales*, 461 F.3d

1210, 1214-15 (10th Cir. 2006) (discussing jurisdictional limitations under

8 U.S.C. § 1252(a)(2)(C) and (D)).

---

[5]     Exceptions to mootness include whether "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) [a matter] is a properly certified class action suit."  *Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002) (quotation omitted).

We first address petitioner's due process argument that DHS issued the FARO prematurely. By regulation, once an NOI is issued, an alien has ten days (thirteen days if service is by mail) to file a response requesting the evidence against him and, upon receipt of that evidence, another ten or thirteen days to file a response to the charges in the NOI. *See* 8 C.F.R. § 238.1(c). Petitioner filed his request for the evidence against him on April 2, 2009, within the period permitted by the regulation. Therefore, DHS's issuance of the FARO prior to providing petitioner with the evidence against him and a chance to file a final response to the charges in the NOI was premature.

In order to prevail on a due process claim, however, petitioner must show prejudice. *See Alzainati v. Holder*, 568 F.3d 844, 851 (10th Cir. 2009). Based on this requirement, respondent contends there is no reversible error in this case because petitioner failed to argue in his opening brief that he was prejudiced by the premature issuance of the FARO. While this allegation is accurate, petitioner argued in his reply brief that his conviction does not qualify as an aggravated felony. Ordinarily, the failure to raise an issue in an opening brief waives consideration of that issue. *See Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1147 n.11 (10th Cir. 1999). But we retain discretion to overlook waiver "particularly when we are presented with a strictly legal question the proper resolution of which is beyond doubt or when manifest injustice would otherwise result." *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992) (discussing

-15-

exceptions to waiver in context of issue not raised in district court).  We do so

here because whether petitioner's 1993 conviction qualifies as an aggravated

felony is a "strictly legal question the proper resolution of which is beyond

doubt," *id.*

Petitioner was convicted under California Health & Safety Code § 11351,

which criminalizes possession or purchase of controlled substances for sale,

including cocaine, and authorizes two, three, or four year's imprisonment.  This

conviction most likely qualifies as an aggravated felony under the first, broader

phrase of the definition in § 1101(a)(43)(B), "illicit trafficking in a controlled

substance," because it was a felony and, as petitioner concedes, involved a

trafficking component.  *See Garcia v. Atty. Gen.*, 462 F.3d 287, 291 (3d Cir.

2006) (discussing these elements of the "illicit trafficking route" to determining

whether a conviction qualifies as an "aggravated felony" under § 1101(a)(43)(B)).

However, we need not, and do not, take this route to our conclusion.  Instead, we

analyze only whether petitioner's 1993 conviction falls within § 1101(a)(43)(B)'s

narrower subcategory of a "drug trafficking crime (as defined in [18 U.S.C.

§ 924(c)]," using the categorical approach.  *See Nijhawan v. Holder*, 129 S. Ct.

2294, 2300 (2009) (categorizing trafficking offenses under § 1101(a)(43)(B) as

"generic crimes" warranting a categorical approach).  Under the categorical

approach, we can "look only to the statutory definitions of the prior offenses, and

not to the particular facts underlying those convictions" in order to determine

-16-

whether an offense qualifies as an aggravated felony. *Vargas v. Dep't of Homeland Sec.*, 451 F.3d 1105, 1108 (10th Cir. 2006) (alteration and quotation omitted).

Petitioner does not dispute that his state conviction for Possession/Purchase of a Controlled Substance for Sale, here possession of cocaine for sale, is analogous to an offense under 21 U.S.C. § 841(a), a provision of the Controlled Substances Act (CSA) that makes it unlawful to possess with intent to distribute certain controlled substances, including cocaine. His contention is that the offense would not be punishable as a felony under § 841 due to the quantity of cocaine petitioner possessed with intent to sell. Petitioner argues that the court should first consider the United States Sentencing Guidelines (Guidelines) range of 6-12 months that he claims is applicable to the quantity of cocaine involved, and only then determine that his state conviction would not be a felony under the CSA.

We reject this argument. Our analysis begins with 18 U.S.C. § 924(c), to which the definition of "aggravated felony" in § 1101(a)(43)(B) refers for a definition of a "drug trafficking crime." Section 924(c)(2) defines "drug trafficking crime" as "any felony punishable under [*inter alia*] the Controlled Substances Act (21 U.S.C. [§] 801 et seq.)." And a "felony" for purposes of Title 18 is defined as an offense for which "the maximum term of imprisonment authorized" is more than one year. 18 U.S.C. § 3559(a)(1)-(5). The Supreme

Court has clarified that "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." *Lopez v. Gonzales*, 549 U.S. 47, 60 (2006). The Court also stated that "for purposes of § 924(c)(2) the crimes the CSA defines as 'felonies' are those crimes to which it assigns a punishment exceeding one year's imprisonment." *Id.* at 56 n.7.

Notably, neither § 3359(a) nor *Lopez* says anything about consideration of the applicable sentencing range under the Guidelines when determining the maximum term of imprisonment authorized or the punishment assigned by the statute of conviction and penalty. Thus, there is no merit to petitioner's argument that the court should first consider the Guidelines sentencing range of 6-12 months that he claims is applicable to his offense and then determine that his state conviction would not be a felony under the CSA because it was subject to a term of imprisonment of one year or less. Instead, to determine whether a state offense, if charged under the CSA, would be a felony, the court looks to the maximum term of imprisonment authorized under the relevant CSA provision. With respect to cocaine, a Schedule II controlled substance, *see* 21 U.S.C. § 812(c), the CSA authorizes several different maximum terms of imprisonment depending on the quantity involved, but all are in excess of one year. *See* 21 U.S.C. §§ 841(b)(1)(A)(ii) (maximum term of life if five kilograms or more), (b)(1)(B)(ii) (maximum term of forty years if 500 grams or more), and (b)(1)(C)

-18-

(maximum term of twenty years for any quantity up to 500 grams). Accordingly, regardless of the amount of cocaine in petitioner's 1993 conviction, that conviction qualifies as a felony punishable under the CSA and is therefore a "drug trafficking crime" and an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43)(B).

We next consider petitioner's argument that it was improper to place him in expedited removal proceedings under 8 U.S.C. § 1228(b) because he is not an alien described in that statute. More specifically, he first claims that expedited removal proceedings under § 1228 may be initiated only at the end of an alien's incarceration for the offense that qualifies as an aggravated felony (in his case, some time in 1993), while here such proceedings were initiated after his release from custody for another matter in 2009. This argument is based on a reading of a *different* statutory section, 8 U.S.C. § 1228(a), which pertains to the initiation of expedited removal proceedings against criminal aliens while in custody. Section 1228(b) is broader in that it applies to aliens who have committed an aggravated felony and, *inter alia*, were "not lawfully admitted for permanent residence at the time at which proceedings under this section commenced." 8 U.S.C. § 1228(b)(2)(A).[6] Those conditions are met here, as petitioner was not lawfully admitted for permanent residence when his § 1228(b) proceedings commenced.

_____

[6] Section 1228(b) also applies to aliens who "had permanent residence on a conditional basis (as described in [8 U.S.C. §] 1186a" when "proceedings commenced under [§ 1228(b)]." 8 U.S.C. § 1228(b)(2)(B).

-19-

Thus, petitioner has raised no valid argument that it was improper for DHS to initiate expedited removal proceedings under § 1228(b) long after his release from custody for his 1993 conviction.

Second, petitioner claims that because he has not been admitted to the United States, he does not fall under § 1227(a)(2)(A)(iii). Again, that section renders an alien removable if he "is convicted of an aggravated felony at any time *after admission*." 8 U.S.C. § 1227(a)(2)(A)(iii) (emphasis added). Therefore, he argues, he cannot be placed in § 1228(b) removal proceedings, which pertain to such aliens. We disagree. All three circuits that have addressed challenges to the reference to "admission" in § 1227(a)(2)(A)(iii) (or the term "admitted" in the introductory paragraph of § 1227(a)[7]) have concluded that even aliens who have not been admitted to the United States may be placed in § 1228(b) removal proceedings. *See Bamba v. Riley*, 366 F.3d 195, 199-204 (3d Cir. 2004) (considering parolee); *United States v. Hernandez-Vermudez*, 356 F.3d 1011, 1013-15 (9th Cir. 2004) (considering alien who entered without inspection); *Bazan-Reyes v. INS*, 256 F.3d 600, 604-05 (7th Cir. 2001) (considering parolee). We agree with their reasoning and need not replicate it in full here. Suffice it to say that § 1228(b) applies to aliens "not lawfully admitted for permanent

---

[7] The introductory paragraph of § 1227(a) provides: "Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens[.]"

residence" at the time expedited removal proceedings under that section began, 8 U.S.C. § 1228(b)(2)(A), and its cross-reference to § 1227(a)(2)(A)(iii) simply "mean[s] that, among persons who are not permanent residents, *only aggravated felons* are subject to expedited administrative removal," regardless of whether they were previously admitted. *Hernandez-Vermudez*, 356 F.3d at 1013. It is irrational to think Congress meant to afford more favorable treatment to an alien who enters illegally than one lawfully admitted. *See Bamba*, 366 F.3d at 203; *Bazan-Reyes*, 256 F.3d at 605. Thus, because we have concluded that petitioner is an aggravated felon within the meaning of § 1227(a)(2)(A)(iii), he is an alien described in § 1228(b), and it was not improper to place him in expedited removal proceedings under that statute.

## III. <u>Conclusion</u>

For the foregoing reasons, the petition for review is DENIED. Petitioner's Motion to Seal is granted to the extent he requests to be identified in court documents only by his initials. That motion is denied as moot to the extent he requests sealing or redaction of any party filings in this case that may be made publicly available, as this court's policy in immigration cases is to prevent public

-21-

access to all documents the parties have filed with the court either in electronic form or in hard copy, including the certified administrative record.

Entered for the Court


John C. Porfilio
Circuit Judge